[*General Term, October*, 1872.]

## MARMADUKE & BROWN v. HARVEY, DRAKE & CO.

K. & Co., in St. Louis, purchased from M. & B. one hundred and two sacks of wheat for cash on delivery, thereby representing themselves as solvent, and consigned the same to H., D. & Co., at Cincinnati. When M. & B. demanded payment, they were informed that K. & Co. were insolvent. K. & Co. transferred the bill of lading to M. & B., who immediately directed H., D. & Co. to sell the wheat when it arrived at Cincinnati, and account to them. H., D. & Co. claimed to be *bona fide* purchasers from K. & Co., and refused to account to M. & B.

*Held*, that the sale to K. & Co. was fraudulent, and passed no title to the wheat, as between K. & Co. and M. & B., and that H., D. & Co., who had been notified in time, acquired no title.

*J. G. & H. Douglass*, for plaintiffs.

*Lincoln, Smith & Stevens*, for defendants.

O'CONNOR, J.   Marmaduke & Brown, plaintiffs in error, and the firm of Kleinsmith & Co., were, in 1868, merchants doing business in St. Louis, Missouri.   On the 11th day of August, 1868, Marmaduke & Brown sold to Kleinsmith & Co. one hundred and two sacks of wheat for cash, and gave to Kleinsmith & Co. an order for the wheat, which was then lying at the levee at St. Louis.   A few days before this transaction, Kleinsmith & Co. wrote to the defendants, Harvey, Drake & Co., of Cincinnati, that they could forward them certain qualities of wheat at prices named.   Harvey, Drake & Co. telegraphed back to send two car-loads of a specified quality. Kleinsmith & Co. delivered the one hundred and two sacks of wheat to the Ohio and Mississippi Railroad, consigned to Harvey, Drake & Co., of Cincinnati, and received a bill of lading therefor, dated August 14, 1868.

At this time, Kleinsmith & Co., of St. Louis, were not indebted to Harvey, Drake & Co., but the firm of Meyer, Kleinsmith & Co., of Chicago, composed of the same persons, was.   Harvey, Drake & Co. advanced no money for the wheat, but when they finally sold it, credited the amount they were to pay, to the indebtedness of the Chicago firm.

On the 14th or 15th of August, two or three days after the purchase, Marmaduke & Brown, according to the custom in case of cash sales, sent in their bill to Kleinsmith & Co. for the one hundred and two sacks of wheat, and were informed that Kleinsmith & Co. had no means of paying the same; that, in fact, Kleinsmith & Co. had failed and gone into bankruptcy.   Kleinsmith & Co., however, who were still in possession of the bill of lading, and the wheat being still at the depot of the railroad in East St. Louis, by the direction of the Chamber of Commerce of St. Louis, transferred the bill of lading to Marmaduke & Brown, and assigned to them, in writing, whatever interest they may have had in the wheat.   This was also on the 14th or 15th of August.

Marmaduke & Brown immediately wrote to Harvey, Drake & Co., informing them of the whole transaction, as-

serting their ownership, and directing them to sell the wheat and account to them, Marmaduke & Brown. It is probable from the evidence that this letter was received by Harvey, Drake & Co., before the wheat reached Cincinnati. Harvey, Drake & Co. refused to recognize Marmaduke & Brown in the transaction, and claimed to be *bona fide* purchasers from Kleinsmith & Co.

The failure and insolvency of Kleinsmith & Co. were complete. According to the testimony, nothing has been realized from their assets, and nothing is expected.

Upon this state of facts, Marmaduke & Brown brought their action against Harvey, Drake & Co. for the value of the wheat and the sacks in which it was contained. The jury returned a verdict in their favor for the value of the sacks, about which at the trial there was no dispute, but found in favor of Harvey, Drake & Co. for the wheat. The plaintiffs below, plaintiffs in error here, made a motion for a new trial, which was overruled, and the case is now here in error.

The principal question in the case before us is, whether the verdict can be sustained by the evidence. From all the testimony in the case, it seems to us the conclusion can not be escaped, that at the time of the cash sale and delivery of the wheat to Kleinsmith & Co., they were fully aware of their hopelessly insolvent condition, and of their utter inability to pay for the same. The sale was for cash, without any condition. The implied representation was that the vendees were able and ready to pay on delivery, and would pay on demand. Now, if this be so, as between Marmaduke & Brown and Kleinsmith & Co., it is clear that, by reason of these implied fraudulent representations, no title to the wheat vested in Kleinsmith & Co., and that, so far as they were concerned, Marmaduke & Brown might well have maintained an action of replevin for the same. The title to property must always be somewhere, and if the title to this wheat never vested in Kleinsmith & Co., it must have remained with Marmaduke & Brown, and as Klein-

smith & Co. could not transfer a title which they never possessed, it results that the defendants, Harvey, Drake & Co., could derive no title through them, unless Marmaduke & Brown had been guilty of some such negligence or conduct as would mislead innocent parties and estop them from denying that Kleinsmith & Co. had a good title.

The evidence shows that Marmaduke & Brown exercised great diligence in immediately notifying Harvey, Drake & Co. of the whole transaction and of their claim to the ownership of the goods. The defendants received the goods with this notice, and were in no way misled, and having appropriated the wheat to their own use, it is but just that they should account to the true owner for it.

We think, therefore, that the court at Special Term erred in overruling the motion for a new trial, and entering judgment on the verdict.

The judgment at Special Term is reversed, and a new trial granted.

This view of the case renders it unnecessary to consider the objections urged against the charge of the court at Special Term.